

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

May 3, 2021

**Via ECF**
The Honorable Judge James R. Cho
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: **Quintanilla, et al. v. Dimet Inc., et al.**
      **20-CV-3735 (JRC)**

Dear Judge Cho:

Our office represents Leonardo Quintanilla, Hector Morel-Tavera and Pedro Quintanilla (collectively, "the Plaintiffs") and we submit this motion jointly with counsel for Dimet Inc. d/b/a Buddy's Kosher Delicatessen and Mehmet Hayat (collectively, "the Defendants"), requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' Settlement Agreement, attached hereto as **Exhibit 1**, were reached after approximately four hours of negotiation during a Court-annexed mediation on March 18, 2021.

The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiffs' counsel's requested attorneys' fees and respectfully request that the Court So Order or approve the Settlement Agreement.

**I.     The Monetary Terms of the Settlement Agreement are Fair and Reasonable**

a.  **The Settlement Amount**

The parties agreed to resolve this matter for the amount of $90,000.00 payable to the Plaintiffs, inclusive of attorneys' fees, which are addressed below.

b.  **Plaintiffs' Position**

Plaintiffs brought this action against Defendants alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). As the Complaint was filed on

August 17, 2020, the relevant statutory period in this matter is from August 17, 2014 through August 17, 2020 ("relevant statutory period"), in accordance with the NYLL's six-year statutory period. In general, Plaintiffs alleged that, during the relevant statutory period, they were required to work sixty-six (66) to seventy-two (72) hours per week but were compensated with flat weekly salaries that did not properly compensate them for approximately twenty-six (26) to thirty-two (32) hours of overtime per week.

Plaintiffs were employed as non-overtime-exempt cooks, food preparers, dishwashers and cleaners at Defendants' delicatessen located at 215-01 73rd Avenue, Bayside, New York 11364. Each Plaintiff was employed for approximately the full six years of the statutory period and each Plaintiff's employment began prior to the commencement of the statutory period.

As Plaintiffs were required to regularly work in excess of forty (40) hours per week, they alleged that they were required to be a regular hourly rate for their first forty (40) hours and time-and-a-half that regularly hourly rate for their approximately twenty-six (26) to thirty-two (32) hours of overtime worked per week. However, as Plaintiffs received a flat weekly salary, that did not fluctuate and compensate Plaintiffs based on their actual hours worked, this pay practice violated the New York State Hospitality Industry Wage Order (N.Y.C.R.R. 146) and the overtime requirements of the FLSA.

Lastly, Plaintiffs alleged that they were entitled to recover under NYLL §195 for Defendants' failure to provide compliant wage notices and wage statements.

While Plaintiffs were confident that they could succeed on all of their claims at trial, Plaintiffs recognized the risks of continuing litigation and the records and defenses maintained by Defendants and preferred a guaranteed payment through a carefully-negotiated settlement agreement. Although Plaintiffs' alleged unpaid overtime wages were significantly greater than the settlement amount, Plaintiffs were greatly concerned that, in the absence of a Court-approved settlement ensuring payment, that continued litigation could result in Defendants filing for bankruptcy, entering into a default, or Plaintiffs receiving a judgment on which they would be unable to collect. In any of those circumstances, Plaintiffs may not have recovered anything at all. These concerns were exacerbated by the fact that delicatessen permanently closed in July 2020 as a result of Covid-19 pandemic and because Mr. Hayat does not have any ownership in any other active businesses. Furthermore, these concerns were supported by the results of our extensive research into Defendants' assets and finances.

Furthermore, the parties maintained factual disputes, specifically as to the number of hours that Plaintiffs worked each week. These factual disputes would not have been resolved until trial. Plaintiffs preferred a lump sum payment upon Court approval of the Settlement Agreement and a guaranteed recovery as opposed to the uncertainty of recovery at a trial at a much later date in the future.

c. **Defendants' Position**

In the complaint filed by the Plaintiffs, they make several factual allegations that the Defendants deny. In the complaint, Leonardo Quitanilla's claimed that he worked 12 hours a day for 6 days each week for a total of 72 hours per week. Hector Morel-Tavera claimed that he worked 11 hours a day for 6 days each week for a total of 66 hours per week. Pedro Quintanilla claimed that he worked 12 hours a day for 6 days each week for a total of 72 hours per week.

Defendants' position is that the hours that each Plaintiff alleges in the complaint that they worked each day (11 or 12 hours) is simply not true. Defendants' position is that each Plaintiff worked only 5 days a week, at most, from 11am to 8pm, with a one-hour lunch break, and therefore their actual work hours each day were only 8 hours, five days a week, which equals 40 working hours per week.

While Defendants were confident that they could succeed at trial in demonstrating that the hours the Plaintiff's claimed they worked each week were not true, Defendants recognized the risks of continuing litigation and a jury finding that the Plaintiffs did in fact work overtime hours that they were not compensated for. Defendants also recognized the severity of the penalties for such a jury finding, including but not limited to liquidated damages and Plaintiffs' attorneys' fees that Defendants would be liable for. Defendants also recognized the risk of a finding that they violated Section 195 of the New York Labor law by failing to provide compliant wage notices and wage statements.

The settlement provides the Defendants finality and enables them to move on with their lives after having the business permanently closed in July 2020 because of COVID-19 while paying an amount which they feel is fair and reasonable to settle this matter in a timeframe they also believe is fair and reasonable.

### d. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter for $90,000.00. The parties believe that this amount is reasonable considering Plaintiffs' claims and the defenses maintained by Defendants in this matter and the fact that the terms of the Settlement Agreement was achieved with through the Court-annexed mediation program and with the assistance of an experienced and qualified wage-and-hour neutral. The parties had genuine, bona fide disputes over the number of hours worked by Plaintiff, the wages paid to Plaintiffs and the dates of Plaintiffs' employment, but both sides made compromises on their positions in order to achieve a fair and reasonable settlement. Additionally, the settlement amount reflects the Defendants' financial realities in light of the fact that the business is now permanently closed.

### II.     The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that

have no relationship whatsoever to wage-and-hour issues.'" Gurung v. White Way Threading LLC, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." Martinez v. Gulluoglu LLC, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting Camacho v. Ess-A-Bagel, Inc., No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release in paragraph 2 of the Settlement Agreement ("Release") is narrowly-tailored to Plaintiffs' claims "which were alleged in the Complaint filed in this action, specifically including [FLSA] and [NYLL] and its associated regulations concerning unpaid wages, record-keeping violations and failure to provide wage statements, which Plaintiffs ever had or now have" against the Defendants. The Release does not raise any concerns regarding unequal bargaining power between Plaintiffs and Defendants and the Release is not overbroad such that there is a concern that Plaintiffs are releasing any and all possible claims against Defendants, including unknown claims and claims unrelated to the claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude Plaintiffs from openly discussing their experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are fair and reasonable and comport with the standards articulated in *Cheeks*.

### III.     Distribution to the Plaintiffs and Requested Attorneys' Fees and Expenses

#### a. Distribution to the Plaintiffs

The parties agreed to a global settlement of $90,000.00 to resolve all claims asserted in this action. If the Agreement is approved by the Court, Plaintiffs will recover an aggregate amount of $59,386.00. As part of the Agreement, each Plaintiff has requested and agreed to receive an equal share of the settlement proceeds in the amount of $19,795.33. As each Plaintiff worked the same length of employment within the statutory period, worked similar hours and were paid similar rates, each Plaintiff alleged nearly the same amount of damages. As Plaintiffs also unanimously agreed to an equal allocation of the settlement proceeds, we believe this is a fair result for each Plaintiff.

#### b. Plaintiffs' Counsel's Requested Attorneys Fees and Expenses

Plaintiffs' counsel respectfully requests $921.00 for identifiable expenses, which include:

- the Eastern District of New York filing fee in this matter: $400.00
- the costs of service of the Summons and Complaint on Defendants in this matter: $221.00
- the costs of the Court-annexed mediation: $300.00

Plaintiffs' counsel respectfully requests one-third of the settlement amount less the above expenses ($89,079.00), or $29,693.00 in attorneys' fees, as agreed upon in the Plaintiffs' retainer

agreements with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $30,614.00.

**Settlement Amount:** $90,000.00
**Attorneys' Expenses:** $921.00
**Settlement less Expenses:** $89,079.00 ($90,000.00 - $921.00)
**Requested Attorneys' Fees:** $29,693.00 ($89,079.00 / 3)
**Total payable to Attorneys:** $30,614.00 ($29,693.00 + $921.00)
**Total payable to Plaintiffs:** $59,386.00 ($90,000.00 - $30,614.00)

Plaintiffs' attorneys and their clients have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc*., 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiffs' counsel throughout the litigation of both matters and the recovery secured through their efforts. Plaintiffs' counsel has zealously advocated for their clients throughout the litigation process and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiffs.

Furthermore, as a check on Plaintiffs' counsel's request for a one-third contingency fee, we attach hereto as **Exhibit 2**, Plaintiffs' counsel's contemporary billing records, lodestar calculation and qualifications.

### IV.   Closing

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of careful negotiation at a Court-annexed mediation before a court-certified wage-and-hour neutral and the terms of the Settlement Agreement comport with Second Circuit case law. As such, we respectfully request that the Court approve the Agreement. We thank the Court for its consideration and remain available to provide any additional information.

Respectfully submitted,

*James O'Donnell*
James O'Donnell, Esq.